WILLIAM H. H. POTTER v. COMMISSIONER OF STATE LAND OFFICE.

HENRY W. FAIRBANKS v. COMMISSIONER OF LAND OFFICE.

*Public land entries—Minimum price—Private sale.*

1. It is the general policy of the Michigan land laws that there shall be no private sales of State lands until they shall have been offered at public sale.

2. Act 197 of 1883, in fixing the minimum price for certain lands, does not authorize their sale, but merely prohibits sales below that price, and-it presumptively means that a higher price may in some cases be demanded.

3. Lands left undisposed of after public sale, cannot be entered at the State Land-office until. the Land Commissioner has had an opportunity to receive and enter the returns from the public sales, and to fix a minimum price and the time for future entries. And the previous deposit of money, which the Commissioner has no right to receive officially, cannot give the depositor precedence as a purchaser.

4. Whether the precedence of one person over another in a simultaneous scramble to enter land at the Land-office, can be determined by the fact that his application is first in the hands of the official conducting the sale—Q.

5. Costs on refusing mandamus were denied where the rights of intervenors could not be passed upon.

Mandamus.   Submitted Nov. 19.   Denied Jan. 7.

*Chas. D. Long* for relators.

*Edward Cahill* for respondent.

CAMPBELL, J. These two cases present substantially the same questions, and may be disposed of together. Both relators applied to the Land-office Commissioner, immediately after the Detroit & Milwaukee land sales, to buy lands which had not been already sold at auction, and paid him fifty cents per acre therefor. These purchases covered substantially the lands unsold. The Commissioner gave no land-sale certificates, and subsequently, before the 9th of July 1884 notified the parties that they could not have their purchases recognized, and returned their money. On the 9th of July most of these lands were applied for by other parties who paid for them, but who in like manner have had no certificates issued, and whose claims are in abeyance.

The rights of these various parties are asserted under Act No. 197 of the Laws of 1883, approved June 9, 1883, and going into effect ninety days after the close of the session, or upon September 8, 1883.

This was an act to provide for the disposition of certain lands commonly known as the Detroit & Milwaukee Railway Lands, which were originally intended to aid in building a railway from Port Huron to Flint and thence to Grand Haven, and which were once offered to the Detroit & Milwaukee Railway, but never legally accepted, and which, having reverted to the United States, were granted absolutely to the State by Act of Congress. Various persons had claimed interests under Augustus D. Griswold, William R. Bowes and Amos Gould, whose titles have been held invalid.

This Act of 1883 provided in the first place for the grant to bona fide purchasers under these parties of tracts in actual possession and improvement, of not more than 160 acres in size. These claims were to be proved up within six months after the act took effect, with power in the Commissioner to extend the time for determining contested cases for thirty days.

All lands not disposed of at the expiration of seven months from the time when the act took effect were to be offered for sale at auction at a minimum price of $1.25 an acre. This sale was required to be had at the county seat, on three weeks'

notice, and within ninety days after the time fixed for purchasers and settlers to file claims.

The questions now before us arise under the next section (section 7), which is as follows: "At the expiration of the time provided for in the preceding sections, the Commissioner of the State land-office shall fix and establish the minimum price of such lands, then remaining unsold, at fifty cents per acre, which price shall thereafter be and remain the minimum price of said lands."

The relator Potter applies for lands in Montcalm, Muskegon and Ottawa counties, and relator Fairbanks for lands in Muskegon and Ottawa. The sales in Montcalm were made June 27, 1884; those in Muskegon on the 1st day of July, and those in Ottawa on the 2d day of July. Sales were made in Barry county on the 3d of July, but these are not involved here. In Montcalm county Mr. Briggs, who was the deputy of the commissioner in charge of the sales, announced that the lands unsold would be subject to entry and sale at the Land-office the next day. In the other counties notice was given that the unsold lands would not be open to entry and sale until July 9, at eight o'clock A. M.

Potter applied on June 28, to purchase 160 acres of Montcalm lands, and deposited the minimum price of fifty cents an acre. On the 3d of July he applied in the same way for the Muskegon lands, and on the 5th for the Ottawa lands. The 4th of July was a legal holiday. On the 5th of July the Commissioner returned the money on all these applications and rejected them, on the expressed ground that the lands would not be subject to purchase - until July 9.

Relator Fairbanks also applied on the 3d and 5th days of July and his applications were rejected for the same reason.

On the 9th of July the office was attended by a crowd of applicants, and all of the lands in question were applied for by persons whose names were taken by priority in their reaching the person in charge, and their applications numbered. They were, except as to their good fortune in reach-

ing the desk first, practically simultaneous. All of these applications are suspended during this controversy.

The Commissioner did not get the results of the sales and lists of unsold lands until the end of the week, and on Monday, July 7, he issued a notice, accompanied by a list of all the unsold lands, whereby it was announced they would be open to entry July 9, at eight o'clock A. M.

We are not now called upon to determine how far the other applicants are entitled to their respective entries, in cases where they covered identical lands. How. Stat. § 5250 seems to contemplate that in some cases, at least where more persons than one are present at the same time as applicants for entering the same lands, they shall be set up and sold to the highest bidder. There is some reason, therefore, for doubting whether the physical ability to reach the head of a crowd seeking the same lands, is enough to give precedence. It would not be proper, in the present state of the record, to adjudicate these claims, on which no certificates have been issued. The only question before us is whether, as soon as sales were over in any county, persons could insist on entering the unsold lands at the minimum price, without waiting for the further action of the Commissioner in receiving and entering the returns, and fixing a time for future entries.

On the argument some ingenuity was expended in figuring up the time allowed for various things to be done under the Act of 1883, so as to show when the ninety days would expire, allowed for sale, and so as to base on this a right of entering lands thereafter. In our opinion this computation is of no importance. Under our land laws it is the general policy that no private sales shall be had until lands have been offered at public sale; and whether the Commissioner sells as soon as the law intends, or delays longer than he should, cannot change the rule which postpones private entries until after public sales. But it is insisted that at any rate the right accrues at once after the public sale has failed to find bidders for tracts thus remaining unsold.

The main argument for this is that as the law itself de-

clares at what sum the minimum price shall be fixed, there is nothing left for the Commissioner to do.

Upon looking at this statute we do not find that it contains any provision sufficient by itself to authorize private sales at all. Merely declaring fifty cents per acre to be the future minimum price, is not a declaration that any one may buy them for that price. It merely provides that they shall not be sold for any less. Beyond this, unless helped out by other statutes, the land cannot be sold at all.

Our attention has not been called by counsel to the peculiar provisions of the several land-sale laws, and we are not called upon to consider them. The Commissioner, who is familiar with them has assumed, and in all probability correctly, that there are laws in existence which allow him to sell these lands at private sale. But if this is so, it would be very singular if he could be compelled to accept money and issue certificates before getting information what lands remain unsold, and preparing his books for the proper transaction of the business. The law is very explicit that he shall not receive money except in cases specified, and that the Treasurer shall receive it unless otherwise provided. How. Stat. § 5232. Until lands are ready for sale, so that the purchaser is entitled to a certificate, no precedence can be gained by depositing money which the Commissioner has no right to receive officially. If the entries on June 28, July 3, and July 5 were premature, the payment of the minimum price amounted to nothing, and could not put relators in advance of others.

When the statute fixes a minimum price it presumptively means that a higher price may be in some cases demandable. An examination of the land laws will show that there are several cases in which this can be required. And inasmuch as those laws must be looked to for authority to sell these lands at all, we must assume the Legislature meant what they appear to mean.

There is in the statute concerning University and School Lands, power given to the Land-office to reserve lands from sale for sufficient reason. § 5276. The land laws in regard

to several other classes of lands require them to be sold in general accordance with the school-land laws. There is power in case of special reasons to lay out these lands in smaller parcels. § 5273. It was in pursuance of this that the State capital was located on a school section laid out in city lots. There is power to have lands in some cases appraised, especially when improved. The law of 1883, which confines original entries of improved lands to 160 acres, may not improbably leave improved lands incapable of such claim because exceeding that amount. We do not care to compare all the statutes to ascertain where the Commissioner gets his present authority, for whether any of them necessarily apply or not, it is quite clear to us that in requiring the Commissioner to fix a minimum price it was designed that he should do so in some formal way, and that his mind should be turned towards the subject of selling at that price. He would be derelict in his duty if he should discover that from collusion at the public sales, or from any other reason, the sale at a minimum ought not to be made, and did not use some care to prevent the mischief, if he could find any legal means of doing so. It appears from the present record that these lands are sought for, and that as soon as open to entry they were applied for.

In our opinion the Commissioner was not bound to regard any application made before he had placed these lands on sale.

In each case the writ asked for must be refused. As we cannot pass upon the rights of the intervenors, we grant no costs.

The other Justices concurred.